UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>    Plaintiff,<br>v.<br>DANIYAR TUYAKBAYEV,<br>    Defendant. | Case No. 15-cr-00086-MEJ<br><br>**ORDER DENYING MOTION TO SUPPRESS EVIDENCE**<br><br>Re: Dkt. No. 11 |

## INTRODUCTION

Daniyar Tuyakbayev ("Defendant") is charged with two Class B misdemeanors: driving under the influence of alcohol (36 C.F.R. § 1004.23(a)(1)) and operating a motor vehicle with a blood alcohol content ("BAC") of .08 percent or greater (36 C.F.R. § 1004.23(a)(2)). Defendant has filed a Motion to Suppress, arguing the arresting officer stopped him unlawfully because he had no reasonable suspicion to believe Defendant was in violation of the law; consequently, he argues any evidence found as a result of that stop should be suppressed. Mot. at 2-3, Dkt. No. 11. If the Court does not find for Defendant on the papers, he requests an evidentiary hearing and an order directing the Government to disclose any other exculpatory or impeachment information. *Id.* at 5. The Government filed an Opposition (Dkt. No. 12), and Defendant filed a Reply (Dkt. No. 15). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **DENIES** Defendant's Motion for the reasons set forth below.

## BACKGROUND

Unless otherwise noted, the following recitation of the facts is based on the information contained in Officer Eric Cole's United States Park Police ("USPP") police report from the night

of Defendant's arrest.[1]  Cole Decl., Ex. A (Police Report, DT0006), Dkt. No. 12-1.

On January 18, 2015, Officer Eric Cole was on duty in San Francisco's Presidio neighborhood.  Around 11:37 p.m., Officer Cole was standing outside of his patrol car at the bus stop at Lincoln Boulevard and Pershing Drive, when he heard a loud engine and observed a dark-colored vehicle traveling northbound on Lincoln Boulevard in his direction.  Officer Cole observed that the vehicle was traveling toward him at a very high rate of speed.  He also observed that the car did not have a front license plate.

When the vehicle slowed for the stop-sign near Officer Cole, he used his flashlight and verbally commanded the driver to pull over.  Officer Cole then observed the vehicle had a rear license plate.  Officer Cole reported that upon making contact with the driver through an open window, he "immediately smelled the odor of alcohol emanating from the vehicle."  Defendant first denied he had an alcoholic beverage prior to the stop, but then stated he had consumed one twelve ounce "Racer 5" beer approximately four hours earlier.  Defendant agreed to submit to Standardized Field Sobriety Testing, and Officer Cole reported that Defendant smelled of alcohol when he exited the car and his eyes were bloodshot and glassy.  He also noted that Defendant slurred his speech.

With Defendant's consent, Officer Cole conducted three field sobriety tests: (1) Horizontal Gaze Nystagmus; (2) Walk and Turn; and (3) One Leg Stand, all of which he reported Defendant failed.  He also administered two Preliminary Alcohol Screening tests.  The first test, administered at 11:53 p.m., resulted in a BAC of .168.  A second test, administered at 11:56 p.m., resulted in a BAC of .146.  Officer Cole then placed Defendant under arrest for suspicion of driving under the influence of alcohol.  Upon arrival at USPP Substation #8 in San Francisco, another breath test at 1:29 a.m. resulted in a BAC of .167.  A final test, administered at 1:30 a.m., resulted in a BAC of .141.  Defendant was then charged with (1) driving under the influence of alcohol (36 C.F.R. § 1004.23(a)(1)), and (2) driving under the influence of alcohol with a BAC greater than .08 percent (36 C.F.R. § 1004.23(a)(2)).

---

[1] The facts presented in both Defendant's and the Government's papers are also recitations from Officer Cole's USPP police report.  Mot. at 1; Opp'n at 2.

At his Initial Appearance on March 11, 2015, Defendant entered a not guilty plea to the charges against him. Dkt. No. 3. Defendant filed the present Motion to Suppress on June 12, 2015, arguing his vehicle was seized without a warrant or reasonable suspicion in violation of the Fourth Amendment. Mot. at 1. Defendant therefore moves to suppress the fruits of the allegedly unlawful seizure. *Id.*

## LEGAL STANDARD

### A.     Motion to Suppress

The Fourth Amendment protects citizens from unreasonable searches and seizures. U.S. Const. amend. IV. In the context of investigatory stops, "[b]ecause stopping an automobile and detaining its occupants, 'even if only for a brief period and for a limited purpose,' constitutes a 'seizure' under the Fourth Amendment, . . . an official must have individualized 'reasonable suspicion' of unlawful conduct to carry out such a stop." *Tarabochia v. Adkins*, 766 F.3d 1115, 1121 (9th Cir. 2014) (quoting *Whren v. United States*, 517 U.S. 806, 809-10 (1996), and *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)); *see also United States v. Lopez-Soto*, 205 F.3d 1101, 1104-05 (9th Cir. 2000) (an investigative traffic stop requires reasonable suspicion, not probable cause).

"The reasonable suspicion standard is not a particularly high threshold to reach." *United States v. Valdes-Vega*, 738 F.3d 1074, 1078 (9th Cir. 2013). "Although [] a mere hunch is insufficient to justify a stop, the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (quoting *United States v. Arvizu*, 534 U.S. 266, 274 (2002)). Reasonable suspicion is rather "formed by 'specific articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *United States v. Colin*, 314 F.3d 439, 442 (9th Cir. 2002) (quoting *Lopez-Soto*, 205 F.3d at 1105). Thus, courts look to the "totality of the circumstances" to determine whether the officer had a "particularized and objective basis" for suspecting criminal activity. *Valdes-Vega*, 738 F.3d at 1078.

This standard also permits officers to "draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to

them[.]" *Arvizu*, 534 U.S. at 273 (citations omitted). The constitutionality of a traffic stop therefore, does not depend on the subjective motivation or intent of an officer. *United States v. Wallace*, 213 F.3d 1216, 1219 (9th Cir. 2000) (citing *Whren*, 517 U.S. at 813). Accordingly, "[t]he fact that the alleged traffic violation is a pretext for the stop is irrelevant, so long as the objective circumstances justify the stop." *Id.* If an officer who executes a valid stop reasonably believes the driver is involved in criminal activity, "he may detain him for a reasonable period of time." *United States v. Martinez*, 403 Fed. App'x 182, 183 (9th Cir. 2010) (citing *Terry v. Ohio*, 392 U.S. 1, 21-23 (1968)) and *United States v. Chavez-Valenzuela*, 268 F.3d 719, 726 (9th Cir. 2001), *overruled on other grounds by Muehler v. Mena*, 544 U.S. 93 (2005)).

"The burden of proving that a warrantless search or seizure falls within an exception to the warrant requirement is on the government." *United States v. Scott*, 705 F.3d 410, 416 (9th Cir. 2012) (citing *United States v. Hawkins*, 249 F.3d 867, 872 (9th Cir. 2001)). Where searches and seizures violate Fourth Amendment protections, the exclusionary rule prohibits unlawful evidence obtained as a direct or indirect result of such invasions and is considered "fruit of the poisonous tree." *Segura v. United States*, 468 U.S. 796, 804 (1984); *United States v. McClendon*, 713 F.3d 1211, 1215 (9th Cir. 2013). Such evidence is also inadmissible against a criminal defendant and should be suppressed where the Government's illegal search is the but-for cause of the evidence's discovery. *Id.* at 1218 (citing *Segura*, 468 U.S. at 815).

**B.    Evidentiary Hearing**

"An evidentiary hearing on a motion to suppress need be held only when the moving papers allege facts with sufficient definiteness, clarity, and specificity to enable the trial court to conclude that contested issues of fact exist." *United States v. Howell*, 231 F.3d 615, 620 (9th Cir. 2000) (citations omitted). "A hearing will not be held on a defendant's pre-trial motion to suppress merely because a defendant wants one. Rather, the defendant must demonstrate that a 'significant disputed factual issue' exists such that a hearing is required." *Id.* at 621 (quoting *United States v. Harris*, 914 F.2d 927, 933 (7th Cir. 1990)). Whether an evidentiary hearing is appropriate rests in the "reasoned discretion" of the district court. *United States v. Santora*, 600 F.2d 1317, 1320 (9th Cir.), *amended on other ground by* 609 F.2d 433 (1979). "A hearing is not

4

required on a motion to suppress if the grounds for suppression consist solely of conclusory allegations of illegality." *United States v. Ramirez-Garcia*, 269 F.3d 945, 947 (9th Cir. 2001) (citation omitted); *United States v. Diaz*, 2006 WL 2990219, at *1 (N.D. Cal. Sep. 28, 2006) ("Where . . . the proffer merely raises speculative possibilities, relief should be denied without further hearing. In the absence of this threshold showing, an evidentiary hearing would be nothing more than a fishing expedition." (citation omitted)).

**DISCUSSION**

Defendant argues Officer Cole violated his Fourth Amendment rights because he had no reasonable suspicion Defendant was involved in criminal activity, making the stop and subsequent seizure unlawful. Mot. at 3. As a result, Defendant requests the Court suppress the fruits of Officer Cole's seizure. *Id.* If the Court is not inclined to suppress this evidence, Defendant contends he is entitled to an evidentiary hearing and discovery of any available exculpatory or impeachment information. *Id.* at 5.

The Government responds that Officer Cole's decision to stop Defendant was justified based on his reasonable suspicion that criminal activity occurred. Opp'n at 4. It contends Officer Cole had probable cause to stop Defendant for two reasons. First, Officer Cole observed Defendant's vehicle travelling at excessive speeds, in violation of Title 36 of the Code of Federal Regulations sections 4.21(c) ("Operating a vehicle at a speed in excess of the speed limit is prohibited.") and 4.2(b), and California Vehicle Code section 22350 ("No person shall drive a vehicle upon a highway at a speed greater than is reasonable or prudent . . . ."). *Id.* at 1, 4. Second, Officer Cole also observed Defendant's vehicle did not display a front license plate in violation of California Vehicle Code section 5200(a) ("When two license plates are issued by the department for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and one in the rear."). *Id.* As to Defendant's requests for additional discovery, the Government contends it is not warranted because Defendant had his arrest report in his possession when he brought the present motion, and he therefore knew the Government's justification for the stop. *Id.* at 8-9.

//

### A. Officer Cole Had Reasonable Suspicion for the Stop

Having considered the parties' arguments, the Court finds Officer Cole had reasonable suspicion to stop Defendant based on his observations that Defendant committed two traffic violations: he was speeding and his vehicle did not have a front license plate. *See United States v. Choudhry*, 461 F.3d 1097, 1100 (9th Cir. 2006) ("A traffic violation alone is sufficient to establish reasonable suspicion." (citing *Whren*, 517 U.S. at 810, and *United States v. Willis*, 431 F.3d 709, 714-17 (9th Cir. 2005)).

#### 1. Speeding (California Vehicle Code section 22350)

First, Officer Cole's belief that Defendant was speeding was not premised on a mere hunch, but rather, on Officer Cole's observations that he heard Defendant's loud engine accelerating towards him and observed Defendant's car travelling at a very high rate of speed. Cole Decl., Ex. A. Officer Cole also attests he was trained and certified to visually and accurately estimate the speed of a moving vehicle as part of his law enforcement duties. Cole Decl. ¶ 6. Although the Court is not aware of a published decision by the Ninth Circuit on this precise issue, other Courts of Appeals have held "[i]t's long been the case that an officer's visual estimation can supply probable cause to support a traffic stop for speeding in appropriate circumstances." *United States v. Ludwig*, 641 F.3d 1243, 1247 (10th Cir. 2011) (citations omitted); *see also United States v. Gaffney*, 789 F.3d 866, 869-70 (8th Cir. 2015) (noting that "[t]he issue is whether the totality of the circumstances at the time of the stop supports the reasonableness of the officer's belief that [defendant] was speeding *at all*" and holding the totality of the circumstances corroborated the reasonableness of the officer's belief that defendant was speeding (emphasis in original)).

State courts have reached similar conclusions. *See, e.g.*, *State v. Butts*, 269 P.3d 862, 872 (Kan. Ct. App. 2012) ("[A]n officer's visual estimation of speed alone—without reference to a speed measurement device, stopwatch, or pacing—may provide the basis for an officer's reasonable suspicion that a driver is speeding."); *State v. Konvalinka*, 2012 WL 1860352, at *6 (Iowa Ct. App. May 23, 2012) ("[A]n officer's visual estimation of speed without any corroborating radar, other mechanical speed detector, or pacing of the vehicle may be sufficient to sustain a conviction where speed is an element of the offense."); *State v. Allen*, 978 So. 2d 254,

6

256 (Fla. Dist. Ct. App. 2008) (an officer's observations of a vehicle may provide reasonable suspicion that the vehicle is speeding); *State v. Barnhill*, 601 S.E.2d 215, 218 (N.C. Ct. App. 2004)) ("We find it relevant that if an ordinary citizen can estimate the speed of a vehicle, so can Officer Malone. Furthermore, it is not necessary that an officer have specialized training to be able to visually estimate the speed of a vehicle. Excessive speed of a vehicle may be established by a law enforcement officer's opinion as to the vehicle's speed after observing it.").

The Ninth Circuit has also upheld a district court's determination that an officer is capable of visually estimating speed of a defendant's vehicle. In *United States v. Rivera*, a California Highway Patrol Officer pulled the defendant's vehicle over after observing it moving 75 miles per hour ("mph") in a 70 mph zone. CR-97-0040 WBS, Dkt. No. 103 at 1-2 (E.D. Cal. Sept. 3, 1999). The officer arrested the defendant on other charges, after which the defendant moved to suppress evidence discovered through the traffic stop. *Id.* at 1. In denying the motion, the court found the officer capable of estimating accurately that the defendant's vehicle was moving 5 mph over the speed limit, despite the fact that he made the determination by observing the car while his own vehicle was at a standstill. *Id.* at 2, 4. The Ninth Circuit affirmed. *United States v. Rivera*, 10 F. App'x 617, 619 (9th Cir. 2001) (unpublished) ("[O]nce the district court's determination that Officer Hughes was able to determine the speed of the vehicle is credited[,] the traffic stop is justified by the speeding violation alone.").

Defendant cites *United States v. Sowards* for the proposition that "an officer's visual speed estimate, standing alone, will not always suffice as a basis for probable cause to initiate a traffic stop." Reply at 10 (citing *Sowards*, 690 F.3d 583, 590-92 (4th Cir. 2012) ("The reasonableness of an officer's visual estimate that a vehicle is traveling in slight excess of the legal speed limit may be supported by radar, pacing methods, or other indicia of reliability that establish, in the totality of the circumstances, the reasonableness of the officer's visual speed estimate.")). But *Sowards* is not in conflict with this case or the case law cited above.

In *Sowards*, the officer stopped the defendant for speeding after visually estimating the defendant's vehicle was traveling 75 mph in a 70 mph zone. 690 F.3d at 584. The issue on appeal was "whether, given the totality of the circumstances, [the officer] had reasonably trustworthy

7

information sufficient to support a prudent person's belief that [the defendant] was speeding." *Id.* at 588. The Government argued the officer's speed estimation, standing alone, provided probable cause for the officer to initiate the traffic stop of the defendant's vehicle for speeding. *Id.* at 590. The Court of Appeals disagreed, stating "the Fourth Amendment does not allow, and the case law does not support, blanket approval for the proposition that an officer's visual speed estimate, in and of itself, will always suffice as a basis for probable cause to initiate a traffic stop." *Id.* at 591. Specifically, the court held that "where an officer estimates that a vehicle is traveling in significant excess of the legal speed limit, the speed differential—i.e., the percentage difference between the estimated speed and the legal speed limit—may itself provide sufficient 'indicia of reliability' to support an officer's probable cause determination." *Id.* (collecting cases where observations of speed differentials between 15-30 mph would be obvious and discernable to an observant and trained law enforcement officer). But "where an officer estimates that a vehicle is traveling in only slight excess of the legal speed limit, and particularly where the alleged violation is at a speed differential difficult for the naked eye to discern, an officer's visual speed estimate requires additional indicia of reliability to support probable cause." *Id.* at 592 (citations omitted). Thus, when the speeding estimate is one of slight excess of the speed limit, an officer's belief should be supported by radar, pacing, or other corroborating evidence. *Id.* at 592. As the speed differential in *Sowards* was only 5 mph, the court held the officer's visual speed estimate was a conclusory guess without appropriate foundation. *Id.* at 594 (noting "the accuracy of human estimation of speed cannot easily, readily, and accurately discriminate between such small variations in speed." (quotation omitted)).

Officer Cole attests that he visually observed Defendant traveling at 20 mph above the posted speed limit of thirty miles per hour, and he heard a loud engine traveling toward him. Cole Decl. ¶¶ 7-8; Cole Decl., Ex. A. It is undisputed that he was approximately 100 yards away from Defendant's vehicle when he made this observation. Cole Decl. ¶ 8; Reply at 8. Further, in his declaration, Officer Cole attests he was trained to visually and accurately estimate with 5 mph the speed of vehicles moving at various speeds, and visually and accurately estimate the speed of moving vehicles between 20 and 80 miles per hour. *Id.* ¶ 6. Defendant does not challenge Officer

Cole's testimony that he was trained to visually estimate the speed of moving vehicles, nor does Defendant allege that Officer Cole was unable to accurately determine his vehicle's distance. *Cf. Sowards*, 690 F.3d at 594, 588-89 (noting the deputy was trained to use a radar unit rather than being "trained to estimate speeds" and had difficulty calculating distance). Officer Cole's visual observations were specific and articulable, and he based his estimate of Defendant's speed on the training he received as part of his law enforcement duties. *See Valdes-Vega*, 783 F.3d at 1078 (reasonable suspicion is a "commonsense, nontechnical conception[ ] that deal[s] with 'the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act.'" (quotation omitted; alterations in original)). Accordingly, the Court finds Officer Cole had reasonable suspicion to believe Defendant was speeding, which provided sufficient justification for an investigatory stop.

        2.        <u>Front License Plate (California Vehicle Code 5200(a))</u>

Even if Officer Cole's justification for stopping Defendant's vehicle for speeding fails, Defendant's failure to display a front license plate provided another valid reason to initiate the traffic stop. California Vehicle Code section 5200(a) provides: "When two license plates are issued by the [DMV] for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and one in the rear." Failing to display a front license plate while operating a motor vehicle in California is sufficient justification for an investigatory stop. *United States v. Lopez*, 2008 WL 4820753, at *2 (N.D. Cal. Nov. 3, 2008), *aff'd*, 397 F. App'x 338 (9th Cir. 2010) (holding that a vehicle's lack of a front license plate provides an objective basis for an officer to suspect that it was driven in violation of section 5200(a)); *People v. Saunders*, 38 Cal. 4th 1129, 1136 (2006) ("[T]the lack of a front license plate has long been recognized as a legitimate basis for a traffic stop." (citations omitted)). Officer Cole thus had reasonable suspicion to stop Defendant's vehicle based on his observation that it did not display a front license plate.

Defendant argues Officer Cole failed to check the rear of his vehicle to determine whether it displayed a rear license plate prior to initiating the stop. Reply at 6. However, Officer Cole attests that based on his training and experience, he knew the vehicle Defendant was driving was the type of car for which the DMV issues two license plates. Cole Decl. ¶ 4. He also attests that

during his tenure as a USPP officer and having conducted over one thousand traffic stops, he has never encountered a passenger vehicle like Defendant's that was issued only one license plate. *Id.*[2] An officer has no duty to negate every possible explanation of innocence before taking action. *See United States v. Tiong*, 224 F.3d 1136, 1140 (9th Cir. 2000); *Lopez*, 2008 WL 4820753, at *2 ("The question. . . is not whether [the] vehicle was in fact in full compliance with the law at the time of the stop, but whether [the officer] had 'articulable suspicion' it was not. The possibility of an innocent explanation for a missing front license plate does not preclude an officer from effecting a stop to investigate the ambiguity." (quoting *Saunders*, 38 Cal. 4th at 1136) (alterations added)). Thus, Officer Cole's observation that Defendant's vehicle did not have a front license plate was an objective basis for him to suspect a violation of California Vehicle Code section 5200(a).

Based on this analysis, the Court finds Officer Cole's justification for the stop based on a violation of California Vehicle Code section 5200(a) was reasonable.

### 3. Scope and Duration of Traffic Stop

Defendant also argues Officer Cole's stop was unreasonable in scope and duration. Mot. at 3. The Government in turn argues Officer Cole's contact with Defendant was reasonably related to investigating the suspected traffic violations. Opp'n at 7. The Government contends that "a police officer's investigatory actions are constitutionally sound when they are 'reasonably related in scope to the circumstances that justified the inferences in the first place.'" *Id.* (quoting *Terry*, 392 U.S. at 19-20. Therefore, the Government argues Officer Cole was permitted to broaden the line of questioning after stopping Defendant because Officer Cole smelled alcohol coming from inside the car and yet Defendant initially informed Officer Cole he had not consumed any alcohol prior to the stop. Opp'n at 7-8.

An officer's mission at a traffic stop is not strictly limited to determining whether to issue a traffic ticket. *See Rodriguez v. United States*, 135 S. Ct. 1609, 1615 (2015) ("Beyond determining whether to issue a traffic ticket, an officer's mission includes 'ordinary inquiries incident to [the traffic] stop.'" (quoting *Illinois v. Caballes*, 543 U.S. 405, 408 (2005) (alterations

---

[2] Defendant also makes no claim that the DMV issued his vehicle only one license plate.

in original)).  Because Defendant may have posed a danger to himself and others, Officer Cole's observations that Defendant's vehicle emanated an odor of alcohol provided an objective and reasonable basis for Officer Cole to infer that Defendant may have been driving while under the influence of alcohol.  *See United States v. Evans*, 786 F.3d 779, 788 (9th Cir. 2015) ("an officer may prolong a traffic stop if the prolongation itself is supported by independent reasonable suspicion."); *see also People v. Lively*, 10 Cal. App. 4th 1364, 1372-73 (1992) ("An inebriated person behind the wheel of a car . . . poses a greater danger to himself . . . and others than the same person lying on a park bench.").  It was within Officer Cole's duties to further investigate the matter based on the fact that Officer Cole smelled alcohol emanating from the vehicle.  Thus, his questioning regarding Defendant's alcohol consumption and his administration of Standardized Field Sobriety testing were reasonable, despite the initial stop being unrelated to those inquires.

Officer Cole was further justified because, after initially stating he had not consumed any alcoholic beverage, Defendant later admitted to consuming one twelve-ounce "Racer 5" beer about four hours before the stop.  Cole Decl., Ex. A.  Officer Cole also reported that Defendant smelled of alcohol, his eyes were bloodshot and glassy, and Defendant slurred his speech.  *Id.*  Based on these observations, Officer Cole had reasonable suspicion to continue his inquiry and conduct field sobriety testing.  *United States v. Hawley*, 2009 WL 3569179, at *4 (N.D. Cal. Oct. 30, 2009) (finding that by the time of defendant's arrest, there was reasonable suspicion when officers smelled the alcohol on her breath and observed characteristics of someone under the influence).  Thus, the scope and duration of Defendant's stop was reasonable based upon the facts observed by Officer Cole on the evening of Defendant's arrest.

4. <u>Summary</u>

Considering the totality of the circumstances, the Court finds the Government has met its burden of showing Officer Cole had reasonable suspicion for initiating the traffic stop based on his observations that Defendant's vehicle was traveling at a high rate of speed approximately 20 mph over the speed limit and that Defendant's vehicle did not have a front license plate in violation of California Vehicle Code section 5200(a).  Further, Officer Cole's actions were reasonable in scope and duration because, upon executing the traffic stop of Defendant's car, an odor of alcohol

1  emitted from the vehicle and Defendant's demeanor gave rise to Officer Cole's suspicion that
2  Defendant was driving under the influence of alcohol.
3      Based on this analysis, there are no contested issues of fact that require an evidentiary
4  hearing in this matter.  Even if Defendant disputes that he was speeding, Officer Cole had
5  independent grounds for the stop.  Furthermore, Defendant has produced no evidence supporting
6  his argument that he was not speeding.  Defendant's own declaration contains no statements
7  supporting this allegedly disputed fact.  *See Howell*, 231 F.3d at 621 ("Howell submitted a
8  boilerplate motion that relied wholly on the fact that the government has the burden of proof to
9  establish adequate *Miranda* warnings.  Based on Howell's conclusory motion, the magistrate
10 judge did not abuse its discretion in refusing to hold an evidentiary hearing."); *United States v.*
11 *Crowley*, 2008 WL 686619, at *3 (E.D. Cal. Mar. 12, 2008); *see also Franks v. Delaware*, 438
12 U.S. 154, 171 (1978) ("To mandate an evidentiary hearing, the challenger's attack must be more
13 than conclusory and must be supported by more than a desire to cross-examine.").  Without more,
14 the Court does not find an evidentiary hearing is necessary.
15     Accordingly, the Court **DENIES** Defendant's Motion to Suppress.
16 **C.    Defendant's Request for *Brady* Material**
17     Defendant also requests an order requiring the Government to disclose any exculpatory and
18 impeachment information, including materials contained in the personnel files of all federal law
19 enforcement agents who testified or were present at the seizure of Defendant and his vehicle.  Mot.
20 at 5. The Government contends that no additional discovery is warranted because (1) Defendant
21 did not identify any discovery he requested that the Government declined to provide; and (2)
22 Defendant knows of the justifications for his stop from Officer Cole's arrest report, and no other
23 officers were present during Defendant's arrest.  Opp'n at 8-9; Cole Decl. ¶ 9.  Nonetheless, the
24 Government states it will continue to comply with its discovery obligations.  Opp'n at 8.
25     Under *Brady v. Maryland*, the Government is required to disclose evidence in time for trial
26 that is favorable to the accused and material to guilt or sentencing.  373 U.S. 83, 87 (1963).
27 Favorable evidence is material if there is a reasonable probability that disclosure of the evidence
28 would change the outcome of the proceeding.  *United States v. Bagley*, 473 U.S. 667, 682 (1985).

"A reasonable probability is a probability sufficient to undermine the confidence in the outcome" of the case. *Id.* Therefore, under *Brady*, the Government is required to provide a defendant impeachment and exculpatory material, in time for use at trial. *Id.* at 676. Additionally, "[a] prosecutor's decision not to preserve or turn over exculpatory material before trial, during trial, or after conviction is a violation of due process under *Brady*." *Broam v. Bogan*, 320 F.3d 1023, 1030 (9th Cir. 2003) (citation omitted).

While Defendant is entitled to exculpatory and impeachment information, he has not established any *Brady* violation has occurred or that the Government has refused to turn over *Brady* material. *See Musaelian v. Ochs*, 2011 WL 6025817, *4 (N.D. Cal. Dec. 5, 2001) ("To establish a *Brady* violation, the defendant must show that the favorable evidence was suppressed by the [Government], either willfully or inadvertently, resulting in prejudice." (citation omitted)). However, to the extent the Government has *Brady* materials relevant to Defendant's request, it must comply with its *Brady* obligations and turn over that evidence. That said, Defendant has not identified any specific requests that the Government denied, without which the Court cannot order specific production.

## CONCLUSION

For the reasons stated above, the Court **DENIES** Defendant's Motion to Suppress Evidence and request for an evidentiary hearing. The Court also **DENIES WITHOUT PREJUDICE** Defendant's request to compel discovery.

**IT IS SO ORDERED.**

Dated: August 6, 2015

_____
MARIA-ELENA JAMES
United States Magistrate Judge